## WELCH *v.* BENNETT ET AL.

PLEADING.—*Counter Claim.—Evidence.*—When a counter claim is pleaded, the reply thereto ends the pleading. If there is any new matter which might have been pleaded to the reply under the former practice, it may now be given in evidence without further pleading.

SAME.—*Practice.—Error.*—Where a pleading is filed, which the party filing it has no right to file, a ruling upon a demurrer to such pleading is immaterial, and cannot be assigned for error.

PARTIES.—*Agreement in Open Court.*—An agreement about a cause pending, made in open court and entered upon the minutes of court, is binding, and a party cannot be allowed to violate such agreement, upon which the court and adverse party have acted.

PRACTICE.—*Special Finding.—Judgment.—Assignment of Error.*—Where a special finding of facts and conclusions of law is made by the court, if the pleadings are sufficient, and the facts are found as alleged, the proper judgment is an inevitable conclusion or consequence; and an assignment of error in rendering a decree under the evidence and the findings of the court presents no question for review.

SAME.—The proper mode in which to reserve questions with reference to such conclusions of law is by excepting to them, and not by a motion to set them aside. Assigning error of law in the legal conclusions is no cause for a new trial.

SAME.—*Pleadings Filed in Vacation.*—There is no law to prevent a defendant from filing an answer, or amended or additional answer, in vacation, when the other party has not completed the issues by reply.

APPEAL from the Tippecanoe Circuit Court.

DOWNEY, J.—In 1838, the appellant, by written contract, sold to William Bennett, the ancestor of the appellees, certain real estate, and put him in possession thereof. William Bennett paid a considerable part of the purchase-money; the time for the payment of the residue thereof was extended by a subsequent agreement; but Bennett died without having made full payment for the land. The appellant, by bill in chancery, proceeded to subject the land to the payment of the residue of the purchase-money, making the widow and heirs of the deceased parties thereto. In 1845, he obtained a decree, ascertaining the amount due to him, and directing the sale of the land for the payment thereof; and at the sheriff's sale he became the purchaser thereof for less

than the amount due him, and took possession of the land. The heirs appealed from that judgment or decree to this court, and the decree was reversed. See *Bennett* v. *Welch*, 15 Ind. 332, for the facts in full. When the cause was remanded to the circuit court, the heirs filed a counter claim, in which they set forth the facts at length, and insisted upon a specific performance of the contract by Welch. On the interposition of a demurrer, it was held by the circuit court that the counter claim did not make a case for specific performance, and judgment was rendered accordingly. From this judgment the appellees again appealed to this court, and this judgment was also reversed. See the case reported in 25 Ind. 140.

On the return of the case to the circuit court, issues were made upon the counter claim.

The trial of the cause was then submitted to the court, by agreement of the parties, the Hon. A. L. Osborn acting as judge, on account of a change of venue which had been taken from the regular judge, the cause having been set down for a hearing before him on a day in vacation. After hearing the evidence, by consent of the parties the court ordered that the cause be continued until the next term, and that at any time during the next term, or during any subsequent term of the court, the same judge should make any and all orders and entries, including his findings and rulings and the judgment thereon, and other necessary orders, subject to all just exceptions then to be taken. At the succeeding regular term of the court, Judge Osborn did not attend, and the cause was continued by the regular judge until the next term. At that term, Judge Osborn appeared, when Welch objected to his proceeding to decide the cause or taking any further steps therein, because there had been no continuance of the cause by him from the special term. This objection was overruled, and the appellant excepted by proper bill of exceptions. The judge then made a special finding and declared his conclusions of law, which finding is not signed by the judge, but is in the record, and referred

to in the bill of exceptions in these words: "Upon which evidence the court made the findings which elsewhere in the record of this case appear, to which said findings and each thereof the defendant, Welch, at the time excepted." The special findings and conclusions of law and the exceptions are as follows:

"That the said defendant, Turner Welch, did on the eleventh day of June, 1838, sell to the said William Bennett the said real estate ·in the said complaint and amended complaints mentioned; and on that day the said contract mentioned in said complaints, of that date, was executed by said defendant, Welch, and Bennett, and by said Jacob D. Mustard and Samuel Mustard as the sureties of said Bennett; and that the land mentioned in said contract is the same land mentioned in said complaints; that on the twenty-fifth day of December, 1838, the said Bennett paid to said defendant, Welch, the sum of three thousand dollars, as stipulated in said contract for him to do; that said defendant, Welch, did not make or tender to said Bennett a deed for said land or any part of it; that said Bennett did not make and tender to said Welch any mortgage upon said lands to secure the deferred payments, and no demand was made by either of said parties upon the other for such deed or mortgage; that afterward, on the first day of July, 1841, the said Bennett and Welch executed the contract in said complaint mentioned of that date, and that Thornton W. Sargeant executed said contract as the surety of said Bennett; that after the first payment of the said sum of three thousand dollars, said Bennett, in his lifetime, paid to said Welch the sum of one thousand one hundred and ninety-two dollars and fifty cents, as follows, to wit: January, 18th, 1840, four hundred dollars; July, 23d, 1840, one hundred and ten dollars; November 13th, 1840, one hundred and eighty-two dollars and fifty cents; September, 1841, five hundred dollars; that said Bennett died intestate, in March, 1842, leaving surviving as his heirs, and only heirs at law, the said Samuel T. Bennett, Louisa J. Talbott, and William S. Bennett; that said Louisa

Welch *v.* Bennett *et al.*

has since intermarried with said Samuel; that said heirs were then infants under the age of twenty-one years; that said William Bennett took possession of said lands immediately after the execution of and under the first said contract, and so continued in possession until his death; that on the thirteenth day of April, 1844, said Welch filed his bill in chancery in this court against said heirs, and such proceedings were had therein that on the thirteenth day of March, 1845, a decree was rendered that such real estate should be sold to pay the amount then found due said Welch as the balance of the purchase-money for said lands; that afterward, on the eighth day of November, 1845, all of said real estate situate in the county of Tippecanoe was sold and conveyed by the sheriff of said Tippecanoe county under said decree to said defendant, Welch; that on the twentieth day of December, 1859, said decree was reversed by the judgment of the Supreme Court of this State; that said Welch took possession of said real estate so purchased under said decree on the first day of March, 1846, and has remained in possession of and enjoyed the rents and profits of the same ever since; that said rents and profits have been of the annual value of seven hundred and twenty dollars, commencing March 1st, 1846, and ending March 1st, 1867; that said Welch after he took possession of said real estate, and during the year 1846, made lasting, valuable, and necessary repairs thereon, of the value of two thousand dollars, and that the same are now of that value to the said real estate; that said Welch has paid taxes legally assessed on said lands in Tippecanoe county, as follows, to wit: 1846, twenty-one dollars and sixty-five cents; 1847, twenty-five dollars and sixty-three cents; 1848, twenty-six dollars and ninety-five cents; 1849, twenty-five dollars and thirty-six cents; 1850, twenty-eight dollars and thirty-one cents; 1851, forty dollars and thirty-three cents; 1852, forty dollars and twenty-eight cents; 1853, thirty-nine dollars and ninety cents; 1854, forty-six dollars and fifty-two cents; 1855, sixty-two dollars and eighty-one cents; 1856,

fifty-nine dollars and ninety-eight cents; 1857, eighty dollars and eighty-four cents; 1858, forty-three dollars and eighteen cents; 1859, eighty-two dollars and thirty-four cents; 1860, sixty-four dollars and twenty-two cents; 1861, one hundred dollars and eighty-six cents; 1862, ninety-seven dollars and ninety-eight cents; 1863, one hundred and thirteen dollars and thirty-two cents; 1864, one hundred and ninety dollars and thirty-one cents; 1865, three hundred and eighty-eight dollars and fifty cents; and in Fountain county nine dollars per year, for each year from 1847 to 1865, inclusive; that after the death of the said William Bennett and after the said sheriff's sale, the administrator of the estate paid to said Welch the sum of three hundred and thirteen dollars and nine cents. And the court further finds that after the death of said Willliam Bennett, the said heirs left said real estate, and the same was taken possession of by the administrator of the estate of said William, and that he received the rents and profits thereof until said Welch took possession on the first of March, 1846, and the same became assets of said estate in his hands; that said estate was insolvent and settled as such; that said Welch received the sum of three hundred and thirteen dollars and nine cents, as his distributive share of the assets of said estate on the sum then remaining unpaid of the purchase-money for said real estate after crediting the same with the amount of his said purchase on said decree; that the rents and profits of said real estate, from the time said William Bennett took possession of the same until the time of his death and from that time until said Welch took possession thereof, was of the annual value of four hundred and eighty dollars; that when said repairs were made by said Welch, said heirs were in the state of Ohio and had no personal knowledge of the same; that they were then infants, the oldest being five years of age, and the youngest being one or two years of age; and the court find, as a conclusion of law upon the facts, as follows:

"First, that the said Welch is accountable to said heirs for the rents and profits of said real estate during all the time

that he has enjoyed the same as above found, after deducting the said amounts paid for taxes, to which said Welch now excepts.

" Second, that said defendant, Welch, is entitled to be credited with the amount of the value of said repairs, with interest thereon from the first day of March, 1847, to which the plaintiffs except.

" Third, that said heirs are not accountable to said Welch for any rents and profits for the use of said lands by said William Bennett, or by themselves, or by the said administrator, to which said Welch excepts. And the court, after taking an account between the parties on the basis aforesaid, find that there is due to the said Welch the sum of sixteen hundred and thirty-one dollars and nine cents.

" And the court further find that there would be due the said heirs the sum of five thousand and fourteen dollars and seventy-three cents, if said Welch was not allowed for said repairs; which is excepted to by said Welch.

" And the court further find as a conclusion of law that upon the payment of said sum of one thousand six hundred and thirty-one dollars and nine cents by the said heirs to the said Welch, or into the clerk's office of this court for his use, and the assumption of their own costs herein, they are entitled to a deed of conveyance from said Welch for said real estate vesting the title thereof in said heirs in fee simple; which is excepted to by said Welch."

The appellant moved the court for a new trial, for the reasons, that the finding was contrary to the evidence, and because of the errors of law in the legal conclusions set forth in the special findings. This motion was overruled by the court. The court having found that there was due Welch on the purchase-money, after settling the accounts for rent against him, and for taxes and improvements in his favor, the sum of sixteen hundred and thirty-one dollars and nine cents, the appellees paid that sum into court and agreed to pay their own costs; the court thereupon adjudged specific performance of the contract in their favor, and appointed a

commissioner, who conveyed the title to them. The evidence is set out in a bill of exceptions, and the question made relating to its sufficiency is properly reserved.

The following errors are assigned by the appellant in this court:

First. The overruling of the appellant's demurrer to the counter claim.

Second. Overruling appellant's demurrer to appellees' reply to appellant's answer.

Third. Sustaining the appellees' motion to strike out portions of appellant's answer, as stated in the abstract herewith filed.

Fourth. In assuming jurisdiction to decide said case and render a final decree therein.

Fifth. In refusing to grant a new trial.

Sixth. In the legal conclusions from the findings of the court.

Seventh. In overruling appellant's motion to set aside the decree.

Eighth. In rendering a decree for specific performance under the evidence and its own findings.

Ninth. In overruling appellant's several motions to reject the appellees' counter claim.

Tenth. In overruling appellant's motion to set aside first, third, and last conclusions of law, specified in the findings of the court.

Eleventh. In overruling appellant's motion to set aside the second conclusion of law, specified in the findings of the court.

Twelfth. In its findings in the first, second, third, and last conclusions of law.

So far as any of the questions presented to us have been already decided by this court, we shall not disturb them. We have examined them so far as to satisfy ourselves that there is no sufficient reason for overruling what has already been decided.

When the case was last in this court, and decided as reported in 25 Ind., *supra*, it was held that the facts set forth

in the counter claim were sufficient, if true, to entitle the appellees to the specific performance of the contract. This, then, disposes of the first assignment of errors now made.

The next error relates to the action of the court with reference to a pleading which the party had no right to file. A counter claim is properly set up in the answer. 2 G. & H. 83, sec. 56, third division. When a counter claim is pleaded, the reply thereto ends the pleading. 2 G. & H. 68, sec. 48. If there is any new matter which might have been pleaded to the reply under the former practice, it may be given in evidence without further pleading. 2 G. & H. 100, sec. 74, and p. 195, section 318. In this case, the reply to the counter claim is denominated in the record an answer, and then the appellant filed another pleading, which is styled a reply. The second assignment of errors relates to the overruling of a demurrer to the last named pleading. It was not material what the court did with that pleading; its action cannot be successfully assigned for error.

It was only a repetition of what had been stated in the counter claim, and did not change the material facts from what they were in the previous pleadings. It should, had a a motion been made, have been stricken out by the court. A demurrer to it did not, however, perform the office of a motion to strike it out.

The next question relates to the action of the court in striking out certain facts of the reply, but improperly spoken of in the assignment of errors as the answer. Upon as careful an examination of the facts of that pleading thus set aside as we have been able to make, we have come to the conclusion that the matter thus stricken out was irrelevant and immaterial, and that it was properly stricken out and set aside. We do not deem it necessary to set out the parts of the pleading stricken out in this opinion.

It is scarcely admissible for the appellant to object to the authority of Judge Osborn to sit in the case, and finally dispose of it at the time of such final disposition. It would be to allow the appellant to violate an agreement made and

entered of record in open court, and upon which the court and his adversary had acted. But for this agreement, Judge OSBORN would, no doubt, have adjourned the special term until some time when he could have attended and made a final disposition of the cause. To allow the appellant to repudiate the agreement, and urge the objection of want of power in the judge to hold the court, would conduce neither to the proper administration of justice, nor to fair and commendable practice. The agreement made and entered upon the minutes of the court was binding upon the appellant. 2 G. & H. 328, sec. 772. There was no error in this action of the court.

Passing over the fifth assignment of errors, for the present, the sixth is based on alleged error in the conclusions of law by the court upon the findings of fact. As we have seen the special finding was not signed by the judge, and instead of having been incorporated in the bill of exceptions, it is only referred to as being elsewhere in the record. According to the bill of exceptions, the appellant excepted to the findings, and not to the conclusions of law. The exception should be to the conclusions of law. 2 G. & H. 207, sec. 341. See *Peoria Marine, etc., Co.* v. *Walser*, 22 Ind. 73. Without deciding that the special findings and conclusions of law and the exceptions are properly in the record, or the exceptions properly taken, we have examined the conclusions of law, as if the findings, etc., were properly in the record, and the exceptions properly made, and see no error in such conclusions of law.

There is no reason shown for setting aside the decree, or judgment, and we do not see that any question is presented by this assignment.

The eighth assignment attempts to call in question the action of the court in rendering the decree or judgment; but when the pleadings are sufficient, and the facts are found as alleged, the proper judgment is an inevitable conclusion or consequence, which cannot be avoided or arrested, except by showing that the pleadings do not assert the necessary

facts, or that the facts so alleged are not really true. This assignment questions neither the law nor the facts of the case, and raises no question which we can decide.

The motions to reject the counter claim were properly overruled. When the first judgment was reversed by this court, and the cause remanded to the circuit court, there was no answer on file, none having been filed by any of the defendants, except that the usual answer of the infants by their guardian *ad litem* was filed. It seems to us that it was proper that the appellees should then file their counter claim, setting up the facts upon which they relied for specific performance of the contract. It was, doubtless, with this view that the case was brought to this court, that they might get rid of the judgment and the sale of the land by the sheriff on the judgment to Welch. The counter claim having been filed in vacation, without any permission from the court, it was proper to test the question of the right to have it on file by a motion to reject it. We know of no law to prevent a defendant from filing his answer or an amended or additional answer in vacation, when the other party has not completed the issue by a reply to the answer. 2 G. & H. 117, sec. 97. As the court might unquestionably have allowed the counter claim to have been filed, as it was filed, and the court refused to set aside the pleading, we ought not, we think, to reverse the judgment on account of this action of the court.

10th, 11th, and 12th. These assignments of error relate to the overruling of the motions to set aside the conclusions of law. The proper mode in which to reserve questions with reference to the conclusions of law is by excepting to them. A motion to set them aside is unknown to correct practice.

The fifth assignment of error is the refusal of the court to grant a new trial, and, as we have seen, the new trial was asked for the reason that the finding was contrary to the evidence. The other reason assigned for a new trial,

that is, "errors of law in the legal conclusions," is no reason
for a new trial. It does not relate to the facts, and, there-
fore, cannot be considered as a reason for again examining
the facts of the case. Was the evidence sufficient? The
evidence on the part of the appellees established the facts
set forth in the counter claim, and there was nothing in the
evidence, we think, which materially changed these essential
facts of the case. Unless, therefore, we were prepared to
say that the opinion or judgment of the court in 25 Ind.
was erroneous and should be overruled, we must regard the
evidence in this case as sufficient to sustain the claim for
specific performance. We concede that the case has some
elements of apparent hardship. But we cannot see that any
one is more chargeable with this result than the appellant
himself. He did not rescind or abandon the contract, or
treat it as having been rescinded or abandoned by the ap-
pellees. On the contrary, he treated the contract as still
open, subsisting, and in full force, when he instituted this
action by the filing of his bill in chancery for its enforce-
ment, which resulted in the sale of the land and his pur-
chase of it. When that decree was rendered, the land sold,
and he had by its purchase again acquired all that he had
parted with, he was not content, but still prosecuted his
claim for the balance due against the estate of Bennett, and
really collected and received from that source a considerable
amount of money. It is not possible for us to say, in view
of these circumstances, that he regarded or treated the con-
tract as rescinded or abandoned. Not until some time after
the judgment or claim under which he had purchased and
was holding the land had been reversed, and until after he
had taken steps with a view to a further prosecution of his
suit, did he discover that the contract was at an end, and
that the appellees had no right to specific performance. It
is held in 25 Ind., *supra*, that under the facts as stated in the
counter claim, and as they appear in evidence now, as we
have said, the case was one for specific performance; and

following that decision, we must hold that the evidence warranted the judgment of the court.

We have thus examined all the assignments of error, and are of the opinion that there is no error in the record.

The judgment is affirmed, with costs.*

*Z. Baird, J. A. Stein, J. R. Coffroth, T. B. Ward, J. E. McDonald, J. M. Butler,* and *E. M. McDonald,* for appellant.

*R. C. Gregory, R. Jones, J. S. Pettit,* and *S. A. Huff,* for appellees.

\* Petition for a rehearing overruled.